**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| Don Alexander, ) | Civil Action No. 1:12-02265-JMC |
| ) | |
| Appellant, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Barnwell County Hospital, ) | |
| ) | |
| Appellee. ) | |
| ) | |

This matter is before the court by way of an appeal by Appellant Don Alexander ("Appellant") from an order filed by the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court") on May 23, 2012, and a motion to dismiss the appeal by Appellee Barnwell County Hospital (the "Hospital").[1] (See ECF Nos. 1, 5-1, 21.) Appellant appeals the Order (the "Order") Confirming Debtor's First Amended Plan for Adjustment of Debts (the "Plan") pursuant to Chapter 9 of the United States Bankruptcy Code ("Chapter 9"[2]).[3]

---

[1] Appellant also appeals the Bankruptcy Court's order that was filed on June 1, 2012 to correct a clerical error in the May 23, 2012 order. (See ECF No. 1.)

[2] Chapter 9 of the Bankruptcy Code, 11 U.S.C. §§ 901-946, governs the adjustment of debts of municipalities. Section 901 sets out which provisions of Title 11 apply to filings of municipalities. See 11 U.S.C. § 901.

[3] Appellant has filed separate appeals, challenging other orders entered by the Bankruptcy Court as follows: (1) an April 18, 2013 order that granted the Hospital's Motion for an Order Authorizing Substitute Purchase Agreement in Aid of Implementation of the Plan and Approving the Notice and Application for Settlement and Compromise Between Debtor and SC Regional Health System, LLC, and a May 7, 2013 order that denied Appellant's Motion to Amend; and (2) a June 11, 2013 order that denied Appellant's Motion to Dismiss and/or Stay. (See ECF No. 1 (In re: Barnwell Cnty. Hosp., C/A No. 1:13-2032-JMC (D.S.C. July 24, 2013)); ECF No. 1 (In re: Barnwell Cnty. Hosp., C/A No. 1:13-2164-JMC (D.S.C. Aug. 9, 2013)).) In addition, several creditors and/or parties of interest also appealed the April 18, 2013 order that granted the Hospital's Motion for an Order Authorizing Substitute Purchase Agreement in Aid of Implementation of the Plan and Approving the Notice and Application for Settlement and Compromise Between Debtor and SC Regional Health System, LLC. (See ECF No. 1 (In re: Barnwell Cnty. Hosp., C/A No. 1:13-1678-JMC

1

Appellant filed an appeal of the Order, asserting that the Plan should not have been confirmed by the Bankruptcy Court because (1) members of the Hospital's Board of Trustees (the "Board"), who authorized the Chapter 9 filing, were serving on the Board in violation of the dual office holding prohibitions of S.C. Const. Art. VI § 3 and Art. VII § 1A, and (2) the Hospital was not authorized under South Carolina law to bring a Chapter 9 petition. (ECF No. 7.) The Hospital opposes the appeal and has also moved to dismiss the appeal on the ground of mootness. (ECF Nos. 8, 21.) For the reasons set forth below, the court **GRANTS** the Hospital's motion to dismiss and **DISMISSES** the appeal as moot.

## I. RELEVANT BACKGROUND

This proceeding arises out of the Chapter 9 filing in the Bankruptcy Court by the Hospital on October 5, 2011. (ECF No. 21-2 at 1 ¶ 2.) The Hospital is a general medical and surgical hospital located in Barnwell, South Carolina. U.S. News & World Report, http://health.usnews.com/best-hospitals/area/sc/barnwell-county-hospital-6370048 (last visited Sept. 13, 2013). A detailed summary of the Hospital's background is set forth in the Bankruptcy Court's findings of fact, which this court will not set aside unless clearly erroneous:

> Debtor (i.e., the Hospital) was created in 1953 by act of the South Carolina Legislature to provide hospital facilities for Barnwell County. 1953 S.C. Acts 298. The Legislature created the Barnwell County Hospital and Nursing Home Board ("Original Board") and charged it with the responsibility to construct a hospital and establish all rules and regulations for its operations and management. Id.

---

(D.S.C. June 19, 2013)).)

Thereafter, the legislature enacted the Home Rule Act of 1975, S.C. Code Ann. § 4-9-10, et seq. (1986 & Supp. 1998).  Pursuant to the Act, Barnwell County adopted the pure Council form of government.  Under this form of government, both legislative and executive functions are under the purview of the County Council.  The citizens of the County select and vote for those who will serve on the County Council, and whose powers and duties are outlined in part in S.C. Code Ann. § 4-9-30 (5) and (6).  Section 4-9-30(6) specifically enumerates the powers of the County Council, which include those necessary and proper to provide and manage services for local public purposes.  Section 4-9-30(14) also gives the Council the power to enact ordinances for the implementation and enforcement of the powers so conferred.

The County Council abolished the Original Board, took title to all assets of the Barnwell County Hospital and Nursing Home, and entered a contract with an outside group to manage the hospital.  See Ordinance No. 1986-26. ("The Barnwell County Council shall assume responsibility for the operation, management and control of the Barnwell County Hospital and Nursing Home as of the effective date of this ordinance.")  By Ordinance No. 1988-35, as amended by Ordinance Nos. 1993-62, 1999-139, 2003-176, and 2003-178, the County created the Board of Trustees of Barnwell County Hospital.  The ordinances provided the Board with the authority and responsibility to make all rules and regulations for the operation and management of the Debtor.  The ordinances also require regular reports to the County Council and authorize the Board to adopt budgets subject to the approval of the Council.

Appointments on the Board are made by the County Council.  Seven of those representatives are recommended by the County Council members and two representatives are from the Barnwell County Hospital Medical Staff, with one of those two members being appointed by direct election of the medical staff.

Ordinance No. 2003-176 provides that the County Council may remove a board member by majority vote "for any reason or no reason at all."  Any removed board member may be replaced by the nominating procedure set forth in the ordinances.

Rule 6.01 of the Barnwell County Council Rules of Procedure provides the following: Members of Council have the authority pursuant to various ordinances of the County Council to appoint members from their District to various committees, boards and agencies established by County Council.  To the extent that any ordinance of County Council requires that committee appointments of each member to be approved by the remainder of Council, that portion of those ordinances are hereby repealed.  Each member of County Council is hereby entitled to appoint qualified electors of their District to committees, boards and agencies of the County, without the advice and consent of the remaining members of Council.  If a councilperson seeks to appoint a qualified elector to a committee,

>board or agency from outside of their District, that appointment is subject to the advice and consent of County Council.
>
>On April 26, 2011, the County Council met in a Special Meeting. Pursuant to Rule 6.01 and Ordinance No. 1988-35, as amended by Ordinance Nos. 1993-62, 1999-139, 2003-176, and 2003-178, by unanimous vote, seven members of the Board were replaced with the County Council members, who appointed themselves to the Board for their respective districts.
>
>On September 27, 2011, the Board adopted a resolution to authorize the commencement and prosecution of this bankruptcy case. [Doc. No. 5].
>
>On October 5, 2011, Debtor filed a voluntary petition seeking relief under chapter 9 of the Bankruptcy Code.

(ECF No. 5-1 at 27-29.)

Prior to filing its Chapter 9 petition, the Hospital executed an Asset Purchase Agreement (the "Original APA") with SC Regional Health System, LLC, on September 29, 2011, for the purchase of substantially all of the Hospital's assets.[4] (ECF No. 24-2 at 3 ¶ 2.) After the Hospital's Chapter 9 petition was filed, several former members of the Board (including Appellant) filed an action in state court identified as Alexander v. Houston, C/A No. 11-CP-06-476 (the "Alexander State Court Action"). (ECF No. 21-2 at 2 ¶ 3.) Plaintiffs in the Alexander State Court Action sought a declaration that the Barnwell County Council (the "BCC") violated a state constitutional prohibition against dual office holding when its members assumed positions as members of the Board. Id.; see also ECF No. 3-5 at 12-24. In response to the complaint filed in the Alexander State Court Action, the BCC filed a motion to dismiss pursuant to Rule 12(b)(6), SCRCP, arguing that "the claim presented a non-justiciable political question, and the dual office prohibition was not violated by what it termed a 'vertical' duality." Quoting Alexander v. Houston, Op. No. 27260 (S.C. Sup. Ct. filed May 29, 2013) (Shearouse Adv. Sh.

---

4 Barnwell County (South Carolina), Bamberg County (South Carolina), and Bamberg County Memorial Hospital were also parties to the Original APA. (ECF No. 24-2 at 3 ¶ 2.)

4

No. 24 at 63). The state circuit court granted the BCC's motion to dismiss, finding that the issue was a non-justiciable political question, while also rejecting the dual office holding challenge.[5] Id. at 64. The decision of the state circuit court granting the BCC's motion to dismiss was certified for appeal to the South Carolina Supreme Court, pursuant to Rule 204, SCACR. Id.

On March 7, 2012, Appellant filed a motion to intervene in the Hospital's bankruptcy case for the purpose of asking the Bankruptcy Court to stay the bankruptcy matter pending the adjudication of the Alexander State Court Action. (ECF No. 21-2 at 2 ¶ 4.) On March 19, 2012, the Bankruptcy Court granted Appellant's motion to intervene. (Id.)

On March 23, 2012, the Hospital filed the Plan. (Id. at 2 ¶ 5.) On April 5, 2012, Appellant filed objections to the Plan, asserting that service on the Board by members of the BCC violated the South Carolina Constitution's prohibitions against dual office holding and, therefore, the Board was illegally constituted when the decision was made for the Hospital to

---

5 The Bankruptcy Court summarized the circuit court's decision as follows:

> Relevant to this matter, the state court found that the County Council members did not violate the South Carolina Constitution, which provides, "[n]o person may hold two offices of honor or profit at the same time." S.C. Const. Art. VI, § 3. The state court reasoned that there is a vertical relationship between the County Council and the Board. While both positions may be considered offices as contemplated by the dual office holding prohibition, "because the Council has the power to perform the duties that they delegated to the Hospital Board without its existence, by removing the members of the Board and installing themselves in their stead the Council members gain no new or additional powers beyond those which they previously possessed." Alexander, C/A No. 2011-CP-06-476, slip op. at 8 (May 2, 2012). The court further reasoned that because the Board is a "subentity" of the County Council, "the County Council could have simply eliminated the Hospital Board and run the hospital based on the aforementioned authority, but instead chose to remove the members of the Board and place themselves in the positions." Id. at 9.

(ECF No. 5-1 at 29-30.)

seek Chapter 9 protection. (Id.) Appellant further asserted that the Hospital was not specifically authorized to be a Chapter 9 debtor. (Id.) On May 23, 2012, the Bankruptcy Court entered the Order, confirming the Plan and finding that the dual office holding prohibition had not been violated and that the Hospital met Chapter 9 eligibility requirements. (ECF No. 5-1.)

On June 6, 2012, Appellant filed a notice to appeal the Order to this court pursuant to 28 U.S.C. § 158(a) or (b). (ECF No. 21-2 at 3 ¶ 8 (citing ECF No. 1).) The transaction contemplated by the Original APA failed to close on or before June 30, 2012, as scheduled, and the Hospital began a search for a new asset purchaser. (Id. at ¶ 12.)

On August 9, 2012, the Clerk of Court entered a document, notifying the parties of the filing of the bankruptcy appeal and setting up a briefing schedule for their submissions.[6] (ECF No. 2.) On August 23, 2012, Appellant filed his brief, identifying the issues on appeal as "(1) Whether the Bankruptcy Court erred in finding that Hospital Board members were not in violation of the dual office holding prohibitions of S.C. Const. Art. VI § 3 and Art. VII § 1A and thus was properly authorized to file the bankruptcy petition[] [and] (2) Whether the Bankruptcy Court erred in finding that Respondent (the Hospital) met the eligibility requirements under 11 U.S.C.§ 109(c)." (ECF No. 7.) The Hospital filed its brief on September 7, 2012, to which Appellant filed his brief in reply on September 24, 2012. (ECF Nos. 8, 9.)

On November 26, 2012, the Hospital executed an Asset Purchase Agreement (the "New APA") with BCH Acquisitions Group, LLC ("BCH"). (ECF No. 24-2 at 4 ¶ 9.) On December 7, 2012, the Hospital filed a motion to substitute the New APA for the Original APA and to substitute BCH in the place of SC Regional Health System, LLC, which substitutions, if

---

[6] The briefing schedule for a bankruptcy appeal to a federal district court is established by law. See Fed. R. Bankr. P. 8009. According to Rule 8009, an appellant has fourteen days after filing a notice of appeal within which to file a supporting brief. Id. at 8009(a)(1).

approved, would allow the sale of the Hospital's assets in accordance with the Plan. (Id.) The Bankruptcy Court granted the Hospital's motion to substitute on April 18, 2013. (Id. at 5 ¶ 11.)

On May 29, 2013, the South Carolina Supreme Court reversed the circuit court's decision granting the BCC's motion to dismiss in the Alexander State Court Action. (See ECF No. 14-1.) In so doing, the South Carolina Supreme Court found that simultaneous service on the BCC and the Board constituted improper dual office holding in violation of the South Carolina Constitution. (Id. at 5-6.) Thereafter, Appellant filed a supplemental brief on June 5, 2013, requesting that the court "hold the Bankruptcy Court was in error in finding the Respondent [the Hospital] to be an eligible debtor and not in violation of the dual office holding prohibition and reverse the Order Confirming the Debtor's First Amended Plan for Adjustment of Debts." (ECF No. 15 at 5.) On June 6, 2013, Appellant filed a motion in the Bankruptcy Court to dismiss the bankruptcy petition and/or stay the sale of the Hospital's assets. (ECF No. 24-2 at 5 ¶ 17.) The Bankruptcy Court held a hearing on Appellant's motion to dismiss and/or stay on June 11, 2013, and denied the motion on that same day. (See ECF No. 24-2.) On June 12, 2013, the Hospital's assets were sold to BCH in accordance with the New APA and the Plan became effective as of June 13, 2013. (ECF No. 21-2 at 4 ¶ 19.)

The Hospital filed opposition in this court to Appellant's supplemental brief on June 24, 2013, to which he filed a supplemental brief in reply on July 2, 2013. (ECF Nos. 16, 17.) Subsequent to the filing of supplemental briefing by the parties, the Hospital filed a motion to dismiss the appeal for mootness on July 22, 2013. (ECF No. 21.) Appellant filed opposition to the Hospital's motion to dismiss on August 8, 2013. (ECF No. 24.) On August 16, 2013, the court held a hearing on both the merits of the bankruptcy appeal and the Hospital's motion to dismiss the appeal as moot.

## II. LEGAL STANDARD

A.     Bankruptcy Appeals

This court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158; see, e.g., In re Kirkland, 600 F.3d 310, 314 (4th Cir. 2010) (noting district court's "capacity as a bankruptcy appellate court"). The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. See 28 U.S.C. § 158(c)(2). Accordingly, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012). A bankruptcy court's conclusions of law are subject to de novo review. In re Biondo, 180 F.3d 126, 130 (4th Cir. 1999); In re K & L Lakeland, Inc., 128 F.3d 203, 206 (4th Cir. 1997).

B.     The Doctrine of Mootness

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." Deakins v. Monaghan, 484 U.S. 193, 199 (1988) (citations omitted). "'[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction . . . .'" Townes v. Jarvis, 577 F.3d 543, 546 (4th Cir. 2009) (quoting United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008)). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies" under Article III of the Constitution. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983). "A case becomes moot when the issues presented are no longer 'live' or the parties lack

a legally cognizable interest in the outcome." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 370 (4th Cir. 2012) (internal quotation marks omitted).

Mootness in bankruptcy appeals arises in two forms: constitutional mootness and equitable mootness. Carr v. King, 321 B.R. 702, 705 (E.D. Va. 2005). Constitutional mootness refers to the well-settled notion that "[w]hen there is no longer a case or controversy in the constitutional sense, an Article III court is without jurisdiction to adjudicate." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 841 F.2d 92, 95 (4th Cir. 1988). A federal court lacks authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Therefore, "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Id. (quoting Mills, 159 U.S. at 653).

In contrast, "the doctrine of equitable mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002). Equitable mootness is "[a]pplied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments" and "is often invoked when it becomes impractical and imprudent 'to upset the plan of reorganization at this late date.'" Id. at 625 (quoting In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994)). Moreover, in applying equitable mootness, a court "does not employ rigid rules," but must "determine whether judicial relief on appeal can, as a pragmatic matter, be

granted." Id. Specific "[f]actors in making this determination include (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties." Id.

C.      Motions to Dismiss for Mootness

The appropriate means for challenging the mootness of a case is a motion under Fed. R. Civ. P. 12(b)(1). See Friends of Animals v. Salazar, 670 F. Supp. 2d 7, 11 (D.D.C. 2009) (holding that "[a] motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1)"). The burden of showing subject matter jurisdiction on a Rule 12(b)(1) motion rests with the plaintiff, as the party invoking it. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

### III.    ANALYSIS

In this appeal, Appellant argues that the Bankruptcy Court erred in confirming the Plan because (1) members of the Board, who authorized the filing of the Hospital's Chapter 9 petition, were serving in violation of the dual office holding prohibitions of S.C. Const. Art. VI § 3 and Art. VII § 1A; and (2) the Hospital was not an eligible debtor under Chapter 9. (See ECF No. 5-1.) In addition to opposing the appeal, the Hospital has moved to dismiss the appeal, asserting that the appeal has been rendered moot. (See ECF No. 21.) Before considering the merits of the appeal, the court must address first the issue of whether the appeal is barred by mootness, because mootness is a jurisdictional issue. See, e.g., Church of Scientology of Cal., 506 U.S. at 12 ("[I]f an event occurs while a case is pending on appeal that makes it impossible

for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed," for federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'") (quoting Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

A.     Motion to Dismiss for Mootness

   *1.     The Parties' Arguments*

The Hospital moves for dismissal of the appeal, arguing that the appeal is both constitutionally moot and equitably moot. (ECF No. 21.)  In support of this argument, the Hospital asserts that the Plan has been substantially consummated; Appellant failed to obtain a stay of the Order pending the appeal; the court cannot grant effective relief on appeal even if Appellant's arguments have merit; and even if the court could grant effective relief, implementation of that relief would be inequitable. (Id. at 2.)

To show that the Plan has been substantially consummated, the Hospital submitted evidence via affidavit that on June 12, 2013, in accordance with the Plan: (1) all of the Hospital's assets were transferred to BCH, which took control of the hospital facility and hired workers that had been previously employed by the Hospital[7]; (2) BCH paid the Hospital closing and cure

---

7 In addition, BCH received the following from the Hospital: (1) all schedules and due diligence items incident to the New APA; (2) a deed of the real property comprising the Hospital's facility; (3) the right, title and obligations of certain of the Hospital's operating contracts; (4) Bills of Sale for the Hospital's personal property; (5) transfers and powers of attorneys for certain licenses for the operation of the hospital, its rural facilities and its pharmacies; (6) proof of settlements of certain

costs in the amount of $1,400,000.00[8]; (3) a Creditor's Distribution Trust was created, which entity was the recipient of any remaining non-purchased assets of the Hospital for collection and distribution to its unsecured creditors[9]; and (4) the Hospital ceased operations. (ECF No. 21-2 at 5-6.) Based on the foregoing, the Hospital argues that the appeal is constitutionally moot because Appellant seeks to accomplish the impractical and impossible by unwinding the Hospital's bankruptcy. (ECF No. 21-1 at 10.)

The Hospital also argues that the appeal is equitably moot because it would be "both impractical and imprudent to upset the [] bankruptcy" and "[t]he four factors considered . . . in determining whether to dismiss an appeal as equitably moot weigh heavily in favor of dismissal in this case." (Id. at 12-15.) In support of this argument, the Hospital asserts that (1) Appellant failed to obtain a stay of the Order on appeal; (2) the Plan has been substantially consummated; (3) the relief requested by Appellant would substantially affect the success of the Plan; and (4) the Hospital's creditors, BCH, and other third parties would be significantly harmed if the court granted the relief requested in the appeal. (Id.) Accordingly, the Hospital contends that the appeal should be dismissed for mootness.

Appellant opposes the motion to dismiss, asserting that the appeal is not constitutionally moot because the court has the power to unwind the Hospital's sale no matter the complexity or

---

indebtedness; and (7) certificates of Barnwell County and the Hospital regarding the completion of certain conditions precedent to the sale. (ECF No. 21-2 at 5 ¶ 23.)

8 Upon receipt of the $1,400,000.00, the Plan required the Hospital to disburse $701,382.24 to the United States for Medicare overpayments, $47,500.00 to First Citizens Bank and Trust Company, Inc., and $17,000.00 to South Carolina Rural Health. (ECF No. 21-2 at 6 ¶ 26.) In total, the Hospital has paid allowed administrative expenses in the amount of $900,000.00, in addition to final operating costs through June 12, 2013. (Id. at ¶ 27.)

9 The Plan required that the Hospital's right to recover preferential and fraudulent transfers be transferred and vested in a Creditors Distribution Trust. (ECF No. 21-2 at 5 ¶ 21.)

difficulty. (ECF No. 24 at 2 (citing In re Lomagno, 320 B.R. 473, 480 (1st Cir. BAP 2005) (Bankruptcy court had equitable power to find a foreclosure sale, which occurred in violation of automatic stay, void and without effect); In re Wright, 329 Fed. Appx. 137 (9th Cir. 2009) ("unscrambling the eggs" is theoretically possible through disgorgement of unsecured creditors)).) Appellant further asserts that dismissal of the appeal for equitable mootness is unwarranted because (1) Appellant sought a stay as soon as he had grounds to support a stay; (2) the Hospital substantially consummated the Plan by transferring assets and paying creditors after it had been warned about the consequences of proceeding with the assets sale and/or transfer of assets while an appeal was pending; (3) the Hospital should not have attempted to complete the Plan since it was not an eligible Chapter 9 debtor; and (4) a reversal of the Plan would have a limited effect on third parties since the purchaser of the hospital had notice of Appellant's objection to the sale, and the Hospital's other assets have not been distributed to unsecured creditors. (Id. at 3-6 (citing ECF Nos. 24-1, 24-3, 24-4).) Therefore, Appellant requests that the court deny the motion to dismiss and consider the appeal on the merits.

    *2.    The Court's Review*

Upon review, the court finds that this appeal is both constitutionally moot and equitably moot. This appeal is constitutionally moot because Appellant seeks a remedy that would require undoing the Plan in its entirety. In this regard, the Plan has been implemented such that a greater part of the Hospital's assets are in the possession of a non-party to this action and any remaining assets have either already been distributed or are about to be distributed to other non-parties. Moreover, most of the proceeds from the transfer of the Hospital's assets have been distributed to its creditors, who are also non-parties to this action. Based on the foregoing, the court finds

that it would be impossible to award Appellant effective relief under these circumstances. Therefore, the court finds that the appeal should be dismissed as constitutionally moot.

Alternatively, upon consideration of the four factors used to determine whether judicial relief on appeal can be granted, the court finds that the appeal is equitably moot as well. First, although Appellant sought and was denied a stay in the Bankruptcy Court, he failed to seek a stay from this court pending the appeal.[10] While a party is not required to seek a stay pending appeal, a party who fails to do so incurs the risk that during the pendency of the appeal, the appeal may be rendered moot. In re Shawnee Hills, Inc., 125 Fed. Appx. 466, 470 (4th Cir. 2005) (citing Taylor v. Austrian, 154 F.2d 107, 108 (4th Cir. 1946)); In re Kevin Blake Carr, 321 B.R. 702, (E.D. Va. 2005). In this case, because this court was not asked to issue a stay pending the appeal, the Hospital was authorized by the Order to carry out the Plan before the appeal could be heard.

As to the second factor, the consummation of the Plan has been more than substantial. Substantial consummation as defined by the Bankruptcy Code requires three events: (1) transfer of all or substantially all of the property proposed by the plan to be transferred; (2) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (3) commencement of distribution under the plan. 11 U.S.C. § 1101(2); see Mac Panel, 283 F.3d at 625-26. Based on the facts made known to the court, all three of these events have occurred. Moreover, Appellant does not dispute that the Plan was substantially consummated. Instead,

---

10 Bankruptcy Rule 8005 expressly provides that even in the face of a denial of a stay by the bankruptcy court, "[a] motion for such relief, . . . may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge." Fed. R. Bankr. 8005.

14

Appellant takes the position that the Plan's consummation occurred after the Hospital had been warned about the consequences of proceeding with an assets sale and/or transfer of assets while an appeal was pending. Notwithstanding Appellant's arguments, it is clear that the Plan has been substantially consummated.

The third factor weighs against Appellant because he seeks to undo the Plan completely, as opposed to a less extreme measure, such as undoing one component of the Plan. Finally, with respect to the fourth factor, the court finds that the remedy Appellant seeks would unduly harm innocent third parties, who are not before the court, including BCH and any of the Hospital's creditors to whom money was distributed. Therefore, using the four-factor test set forth by the Fourth Circuit for evaluating equitable mootness, the court finds that this appeal should be dismissed as equitably moot.

B.     The Appeal of the Bankruptcy Court's Order

Because the appeal is moot, the court need not consider the merits of the appeal. Mills v. Green, 159 U.S. 651, 653 (1895) ("It necessarily follows that when, pending an appeal from the judgment of a lower court, . . . , an event occurs which renders it impossible for this court, . . . , to grant him any effectual relief whatsoever, the court will not proceed to a formal judgment, but will dismiss the appeal.")

IV.   CONCLUSION

For the foregoing reasons, the court hereby **GRANTS** the Hospital's motion to dismiss and **DISMISSES** as moot Appellant's appeal of the Bankruptcy Court's Order Confirming Debtor's First Amended Plan for Adjustment of Debts pursuant to Chapter 9 of the United States Bankruptcy Code. (ECF Nos. 1, 5-1, 21.)

**IT IS SO ORDERED**.

*/s/ J. Michelle Childs*

United States District Judge

September 13, 2013
Greenville, South Carolina